Butler, J.
The Act of 1740, P. L., 160, enacts as follows —“If any free negro, mulatto, mustizo, or any slave shall harbor, conceal or entertain any slave that shall run away, or shall be charged or accused of any criminal matter; any free negro, mulatto, mustizo, or any slave who shall harbor, conceal, or entertain any such slave, being duly convicted thereof, according to the directions of this Act' — -if a slave, shall suffer such corporal punishment, not extending to life or limb, as the justice or justices who shall try such slave, shall, in his or their discretion, think fit; and if a free negro, mulatto, or mustizo, shall forfeit the sum of ten pounds current money for the first day, and twenty shillings for every day after, to the use of the owner or' owners of the slave so harbored, concealed, or entertained, in like manner as debts are directed to be recovered by the Act for the trial of causes, small and mean; and that in case such forfeitures cannot be levied, or such free negro, mulatto, or mustizo, shall not pay the same, together with the damages that attend the prosecution, such free negro, mulatto, or mustizo, shall be ordered by said justice to be sold at public outcry; and the money arising from such sale shall, in the first instance, be paid for and applied to the payment of forfeitures due to the owner or owners, and the charges attending the prosecution and sale; and the surplus, if any, shall be paid by the said justice into the hands of the public treasurer, to be disposed of,” &c., &c. The Act of the Legislature of 1821, entitled an Act more effectually to provide against the offence of harboring negroes or other slaves, Sec. 2, provides, “That if any free negro, mulatto, or mustizo, shall harbor, conceal, or entertain any fugitive or runaway slave, and be convicted thereof before two justices and five freeholders, he shall suffer such corporal punishment, not extending to life or limb, as the said justices and freeholders who try such offender shall, in their discretion, think fit.”
The question now arises, is there such a difference in the provisions of these Acts, as to render them inconsistent with and repugnant to each other, and thereby making the latter repeal the former ? This was the opinion of the presiding Judge, and this Court has come to the same conclusion.
*167 By the first Act, a single justice and two freeholders may have jurisdiction of the case, but the punishment' to be inflicted does not depend on their discretion, but is prescribed by the Act.
By the second Act, the Court is differently organized, consisting of two justices and five freeholders, and the punishment to be inflicted is not imposed and prescribed by the Act, but depends upon the discretion of the Court, with the qualification and restriction that the punishment must be corpofal, and not extend to life or limb. The Legislature never contemplated that there should be two tribunals for the trial of free negroes for the same offence, and the offence here charged is the same, according to both Acts. The tribunal, by the Act of 1821, is increased and elevated, and on that account, perhaps, invested with higher powers than was given to the Court by the Act of 1740. By the super-sedure of the latter, it has taken from it its jurisdiction, as effectually as if it had been abolished in terms. It is like saying that all causes heretofore tried before one justice and two freeholders, shall be hereafter tried before two justices and five freeholders; as much so as if the Legislature were to say, that all cases of account heretofore tried by the ordinary, shall hereafter be tried in the Court of Chancery. Suppose that the Legislature should enact that all free persons of color, for all offences, shall be tried before a circuit Judge and jury; would it be contended that the present court of justices and freeholders could have cognizance of such' cases ? The proposition would be too palpable to admit of doubt. The remark may be made generally, that where a new forum has been created for the trial of cases that belonged to another, it has a superseding and paramount jurisdiction, and thereby deprives the old tribunal of all authority. The other view taken by the circuit Judge would be equally conclusive, to wit: that the penalty has been changed by the Act of 1821; by this Act two justices and five freeholders have the same power over free negroes, that one justice and two freeholders had over slaves; instead of pronouncing the sentence of law, the Court is vested with power to pronounce a judgment dictated by its own discretion. This is a material alteration in the penalty and the manner of imposing it: and the position seems to be well sustained *168 by authorities, that where a subsequent Act either diminishes or increases a penalty, it operates as a repeal of any former law on the same subject. Upon this ground it was decided by this Court, in the case of the State vs. Evans, indicted for trading with a slave, that the Act of 1834 repealed the Act of 1817, so far as it applied to retailers of spirituous liquors. The same position is sustained by the case of Nichols vs. Squire, and the authorities there referred to; 5 Pickering, 169.
Yeadon, for motion.
Halbeck, contra.
The argument of the counsel for the motion, that the remedy provided by the Act of 1740, for compensation to the party injured, will be taken away, may be answered, by saying that it is affected only so far as it depends on a public prosecution; for it is certainly unimpaired, so far as the party has a right to bring a private action for damages, and accords well with the general principles of the law, which keep separate private actions and public prosecutions.
The motion for a new trial is refused.